1
2
3
4
5
6
7
8
9

## IN THE UNITED STATES DISTRICT COURT FOR THE

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **GENERAL SECURITY SERVICES CORPORATION,** ) ) ) | **1:11-CV-724  AWI MJS** |
| **Plaintiff,** ) **v.** ) ) | **ORDER ON DEFENDANT'S MOTION TO DISMISS** |
| **COUNTY OF FRESNO**, ) ) **Defendant.** ) ) | (Doc. No. 5) |

10
11
12
13
14
15
16

    This case arises from a contractual dispute between Plaintiff General Security Services Corp. ("GSS") and Defendant the County of Fresno ("the County").  GSS is a citizen of Minnesota, and filed suit under this Court's diversity jurisdiction.  GSS alleges state law causes of action for breach of contract, breach of the implied covenant of good faith and fair dealing, and conversion.  The County moved to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(6), and oral argument was heard on August 1, 2011.  For the reasons that follow, the County's motion will be granted in part and denied in part.

## BACKGROUND[1]

    From the Complaint, in June 2004, the County and GSS entered into a contract ("the

---

[1]The Complaint attaches and references Exhibits A through Q.  The Court may consider these attached exhibits in resolving this motion.  See Edwards v. Marin Park, Inc., 356 F.3d 1058, 1062 (9th Cir. 2004).

Agreement") whereby GSS was to provide electronic monitoring devices and monitoring services to the County in order for the County to monitor parolees and probationers.

On October 31, 2009, the County terminated the Agreement. GSS then began collecting, cleaning, cataloguing, and shipping all remaining monitoring equipment.

On December 10, 2009, GSS provided the County with a breakdown of equipment that was subject to charges for damage, theft, tampering, or misuse, and sent to the County a final invoice for $245,610.95.

On January 29, 2010, GSS sent a past due letter to the County, and reminded the County that the County had a 45 day payment window in which to pay the invoice, but that this window had now closed. The County acknowledged receipt of the December 2009 invoice through a letter dated February 23, 2010.

By letter dated March 26, 2010, the County denied that it owed the approximately $246,000, and raised several grounds for denying payment.

By letter dated April 28, 2010, GSS sought to remedy the County's grounds for denial of payment in the March 26 letter. GSS adjusted the invoice balance to $221,810.05.

By letter dated May 11, 2010, GSS informed the County that the County's failure to honor the contractual obligations was directly resulting in consequential damages to GSS's relationships with other manufacturers of the equipment and others in the industry.

In letters dated May 18 and May 21, 2010, the County acknowledged receipt of the previous GSS correspondences. The County again denied payment of funds to GSS pursuant to GSS's invoice. The County set forth new grounds for refusing to pay the invoice.

In a letter dated May 28, 2010, GSS replied to the County's May 21, 2010, and again reiterated that the County's failure to honor the contractual obligations was causing consequential harm to GSS.

On June 3, 2010, GSS and employees of the County had a telephonic conference call. Shortly thereafter, on June 7, 2010, the County sent GSS a letter that set out more grounds for denial of payment.

By letter dated July 15, 2010, GSS responded to the additional grounds raised by the

1    County, and made a good faith credit.  GSS adjusted the invoice balance to $156,217.50.

2         By letter dated July 30, 2010, the County again refused to pay GSS.

3         By letter dated August 5, 2010, GSS insisted that the County pay the invoice amount of

4    $156,217.50.

5         By letter dated September 16, 2010, the County stated that its contractual obligations

6    were at most $3,007.50.

7         By letter dated January 24, 2011, GSS's counsel sent a demand letter to the County

8    Probation Department.  See Plaintiff's Ex. R.[2]

9         By letter dated February 1, 2011, Greg Reinke ("Reinke") of the County Probation

10   department replied to the January 24, 2011, demand letter.  See Complaint Ex. P.  Reinke

11   informed GSS that, before instituting a lawsuit against the County, GSS was required to file a

12   claim with the County's governing board.  See id.

13        On February 14, 2011, GSS presented to the County a Government Claim Act claim for

14   damages.  This claim is on a form provided by the County.  See id.

15        By letter dated March 22, 2011, the County denied the claim for damages.  The County

16   contended that GSS's claim was untimely.

17

18                          **LEGAL FRAMEWORK**

19        Under Federal Rule of Civil Procedure 12(b)(6), a claim may be dismissed because of the

20   plaintiff's "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  A

21   dismissal under Rule 12(b)(6) may be based on the lack of a cognizable legal theory or on the

22   absence of sufficient facts alleged under a cognizable legal theory.  Johnson v. Riverside

23   Healthcare Sys., 534 F.3d 1116, 1121 (9th Cir. 2008); Navarro v. Block, 250 F.3d 729, 732 (9th

24   Cir. 2001).  In reviewing a complaint under Rule 12(b)(6), all allegations of material fact are

25

26        [2]Exhibit R is not attached to the Complaint.  However, part of Exhibit P (a February 1, 2011, letter from
     Greg Reinke, the Probation Business Manager) references and describes the January 24, 2011, letter.  See Complaint

27   Ex. P.  Exhibit P is referenced in, and attached to, the Complaint.  The County does not dispute the accuracy or
     authenticity of Exhibit R.  Under these circumstances, the Court may consider Exhibit R in resolving this motion

28   pursuant to the "incorporation by reference doctrine."  See Knievel v. ESPN, 393 F.3d 1068, 1076 (9th Cir. 2005).

taken as true and construed in the light most favorable to the non-moving party.  Marceau v. Blackfeet Hous. Auth., 540 F.3d 916, 919 (9th Cir. 2008); Vignolo v. Miller, 120 F.3d 1075, 1077 (9th Cir. 1999).  However, the Court is not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."  In re Gilead Scis. Sec. Litig., 536 F.3d 1049, 1056-57 (9th Cir. 2008); Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001).  Although they may provide the framework of a complaint, legal conclusions are not accepted as true and "[t]hreadbare recitals of elements of a cause of action, supported by mere conclusory statements, do not suffice."  Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949-50 (2009); see also Warren v. Fox Family Worldwide, Inc., 328 F.3d 1136, 1139 (9th Cir. 2003).   Furthermore, Courts will not assume that plaintiffs "can prove facts which [they have] not alleged, or that the defendants have violated . . . laws in ways that have not been alleged." Associated General Contractors of California, Inc. v. California State Council of Carpenters, 459 U.S. 519, 526 (1983).  A plaintiff's allegations cannot amount to a mere "formulaic recitation of the elements of a cause of action," rather the factual allegations "must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  Thus, to "avoid a Rule 12(b)(6) dismissal, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009); see Twombly, 550 U.S. at 570; see also Weber v. Department of Veterans Affairs, 521 F.3d 1061, 1065 (9th Cir. 2008).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 129 S.Ct. at 1949.

> The plausibility standard is not akin to a 'probability requirement,' but it asks more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'
> . . .
>
> Determining whether a complaint states a plausible claim for relief will . . . be a context specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has

alleged – but it has not shown – that the pleader is entitled to relief.
Iqbal, 129 S.Ct. at 1949-50.  "In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief."  Moss v. United States Secret Serv., 572 F.3d 962, 969 (9th Cir. 2009).

In deciding whether to dismiss a claim under Rule 12(b)(6), the Court is generally limited to reviewing only the complaint, but may review *inter alia* materials which are properly submitted as part of the complaint.  See Edwards v. Marin Park, Inc., 356 F.3d 1058, 1062 (9th Cir. 2004); Lee v. City of Los Angeles, 250 F.3d 668, 688-89 (9th Cir. 2001).  If a Rule 12(b)(6) motion to dismiss is granted, "[the] district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts."  Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc).  In other words, leave to amend need not be granted when amendment would be futile.  Gompper v. VISX, Inc., 298 F.3d 893, 898 (9th Cir. 2002).

**DEFENDANT'S MOTION**

*Defendant's Argument*

The County argues that GSS has failed to comply with the presentation requirements of the California Government Claims Act.  The Complaint shows that the breach of contract claim accrued on January 28, 2010, when the County failed to pay GSS's invoice.  GSS's January 29, 2010, letter to the County acknowledges that, per the Agreement, the County was to pay the invoice by January 27, 2010.  That the parties later exchanged correspondences after January 28, 2010, is of no consequence.  Under the Government Claim Act, GSS had one year from the date of accrual to present their breach of contract claim to the County.  However, GSS did not file a government claim with the County until February 14, 2011.  Accordingly, GSS failed to timely present its breach of contract claim, and that claim should be dismissed for this failure.

With respect to the conversion claim and the covenant of fair dealing claim (which is alleged as a tort), dismissal is appropriate for several reasons.  First, GSS's government claim did

not contain tort allegations, rather it was limited to a breach of contract claim.  Second, the

claims were not presented to the County within six months of their accrual, and thus were not

timely presented.  Third, as argued in reply, GSS cannot recover tort damages for breach of the

covenant of good faith and fair dealing.  Accordingly, GSS's tort claims should be dismissed.

### *Plaintiff's Opposition*

GSS argues that its breach of contract claim is timely for three reasons.  First, the

Agreement states that the County's obligation to pay survives the termination of the agreement.

The Agreement creates a continuing, ongoing obligation to pay.  Under California law, where

there are ongoing obligations under a contract, a party may elect to rely on the contract despite a

breach, and the statute of limitations will not begin to run until the plaintiff has elected to treat

the breach as terminating the contract.  Based on the correspondences of the parties, GSS could

reasonably choose July 30, 2010, as the date when the County breached the agreement, while all

other prior dates represented an election to rely on the contract.  February 14, 2011, is within one

year of July 30, 2010.

Second, on January 24, 2011, GSS's counsel sent a letter to the County Probation

Department.  The contents of this letter substantially comply with the requirements of the

Government Code.  Sending the letter to the probation department was acceptable because it was

sent to an employee of the probation department whose functions include the management or

defense of claims against the County, and because Section XVIII of the Agreement makes

provision for the County to receive notices through the probation department.[3]  Viewing the

January 24, 2011, letter as a Government Claim, it is within one year of the County's asserted

January 28, 2010, accrual date.

Third, equitable tolling should apply.  The County had notice of the claim from the

January 24 letter, and the County will not suffer prejudice because the claims in the February 14,

2011, notice of claim are the same as those found in the January 24 letter.  Further, GSS acted

---

[3] GSS's argument that the letter was sent to an employee whose function includes the management or defense of claims against the County rests entirely on the case of *DiCampli-Mintz v. County of Santa Clara*, 195 Cal.App.4th 1327 (2011).  However, the California Supreme Court granted review of *DiCampli-Mintz*, so that opinion is no longer citable.  Accordingly, the Court will not consider *DiCampli-Mintz* in resolving this motion.

reasonably and in good faith in making repeated attempts to settle the case.  When the County informed it that notice had to be sent to a different recipient, GSS sent that notice promptly within two weeks.

With respect to the tort claims, GSS argues that these claims do not represent a complete shift in allegations, but rather assert liability based on the same acts and omissions contained in the January 24 letter.  Because these claims were fairly reflected in a timely claim, dismissal is not appropriate.

*Legal Standards*

1.    Government Claims Act  – California Government Code § 900 et seq.

 As a prerequisite for filing suit for "money or damages" against a public entity, the California Government Claim Act requires presentation of a claim to the public entity.  See Cal. Gov. Code § 945.4; State of California v. Superior Court, 32 Cal.4th 1234, 1240-44 (2004) ("Bodde").  Lawsuits that seek monetary relief based on claims sounding in tort, as well as claims sounding in contract, are lawsuits for "money or damages."  See City of Stockton v. Superior Court, 42 Cal.4th 730, 738 (2007); Sparks v. Kern County Bd. of Supervisors, 173 Cal.App.4th 794, 798 (2009); Baines Pickwick, Ltd. v. City of Los Angeles, 72 Cal.App.4th 298, 307 (1999).  Claims relating to a cause of action for death or injuries to the person or injuries to personal property must be presented no later than six months after the accrual of the cause of action.  See Cal. Gov. Code § 911.2(a).  The term "injury" means "death, injury to a person, damage to or loss of property, or any other injury that a person may suffer to his person, reputation, character, feelings, or estate, of such nature that it would be actionable if inflicted by a private person."  Cal. Gov. Code § 810.8; Holt v. Kelly, 20 Cal.3d 560, 564 n.4 (1978); Ovando v. County of Los Angeles, 159 Cal.App.4th 42, 63 n.7 (2008).  Claims relating to "any other cause of action" must be presented no later than one year after the accrual of the cause of action.  See Cal. Gov. Code § 911.2(a).  "Accrual of the cause of action for purposes of the government claims statute is the date of accrual that would pertain under the statute of limitations applicable to a dispute between private litigants."  Shirk v. Vista Unified Sch. Dist., 42 Cal.4th 201, 208-09 (2007); K.J. v. Arcadia Unified Sch. Dist., 172 Cal.App.4th 1229, 1234 (2009).  A

claimant presents a claim against a "public entity" by either delivering the claim to the clerk, secretary, or auditor of the public entity, or by mailing the claim to these three individuals or to the governing body of the public entity.  See Cal. Gov. Code § 915(a).  The Government Claims statutes "must be satisfied even in the face of the public entity's actual knowledge of the circumstances surrounding the claim."  City of Stockton, 42 Cal.4th at 738; City of San Jose, 12 Cal.3d at 455.  "Timely claim presentation is not merely a procedural requirement, but is . . . a condition precedent to a plaintiff maintaining an action against [a public entity], and thus [is] an element of the plaintiff's cause of action."  Shirk, 42 Cal.4th at 209; Bodde, 32 Cal.4th at 1240.  Accordingly, the failure to timely present a claim for money or damages to a public entity bars the plaintiff from bringing suit against that entity.  City of Stockton, 42 Cal.4th at 738; Bodde, 32 Cal.4th at 1239; Sparks, 173 Cal.App.4th at 738.

A notice of claim to a public entity must meet Government Code § 910's requirements. See Cal. Gov. Code §§ 910, 945.4; Stockett v. Association of Cal. Water Agencies Joint Powers Ins. Auth., 34 Cal.4th 441, 445 (2004).  Among other things, § 910 requires a claimant to state the "date, place, and other circumstances of the occurrence or transaction which gave rise to the claim asserted" and to provide a "general description of the . . . injury, damage or loss incurred so far as it may be known at the time of presentation."  Cal. Gov't Code § 910;[4] Stockett, 34 Cal.4th at 445.  These statutes are not intended "to prevent surprise," rather they are intended to "provide the public entity sufficient information to enable it to adequately investigate claims and to settle them, if appropriate, without the expense of litigation."  City of Stockton, 42 Cal.4th at 738; City

---

[4]Cal. Gov't Code § 910 reads:

A claim shall be presented by the claimant or by a person acting on his or her behalf and shall show all of the following:
(a) The name and post office address of the claimant.
(b) The post office address to which the person presenting the claim desires notices to be sent.
(c) The date, place and other circumstances of the occurrence or transaction which gave rise to the claim asserted.
(d) A general description of the indebtedness, obligation, injury, damage or loss incurred so far as it may be known at the time of presentation of the claim.
(e) The name or names of the public employee or employees causing the injury, damage, or loss, if known.
(f) The amount claimed if it totals less than ten thousand dollars ($ 10,000) as of the date of presentation of the claim, including the estimated amount of any prospective injury, damage, or loss, insofar as it may be known at the time of the presentation of the claim, together with the basis of computation of the amount claimed. If the amount claimed exceeds ten thousand dollars ($ 10,000), no dollar amount shall be included in the claim. However, it shall indicate whether the claim would be a limited civil case.

of San Jose v. Superior Court, 12 Cal. 3d 447, 455 (1974).  "When a public entity receives a

document which contains the information required by § 910 and is signed by the claimant or her

agent as required by § 910.2, the public entity has been presented with a 'claim' . . . ."  Phillips v.

Desert Hosp. Dist., 49 Cal.3d 699, 707 (1989).  Because the claims statute is designed to give a

public entity "notice sufficient for it to investigate and evaluate the claim . . . the statute should

not be applied to snare the unwary where its purpose is satisfied."  Stockett, 34 Cal.4th at 446;

Connelly v. County of Fresno, 146 Cal.App.4th 29, 37-38 (2008).  Where a submitted claim is

deficient in some way, but the claim substantially complies with all of the statutory requirements,

the doctrine of "substantial compliance" in some cases may validate the deficient claim.  See

Sparks, 173 Cal.App.4th at 800; Connelly, 146 Cal.App.4th at 38.  If the face of the filed claim

discloses sufficient information to enable the public entity to make an adequate investigation of

the claim's merits and settle it without the expense of litigation, then there will be "substantial

compliance" with sections 910 and 910.2.  Ardon v. City of Los Angeles, 52 Cal.4th 241, 247-48

(2011); Connelly, 146 Cal.App.4th at 38.  However, the doctrine of substantial compliance

cannot cure the "total omission of an essential element from the claim, or remedy a plaintiff's

failure to comply meaningfully with the statute."  Sparks, 173 Cal.App.4th at 800; Connelly, 146

Cal.App.4th at 38.  If a claim does not "substantially comply" with § 910 and § 910.2, but

discloses the existence of a claim which, if not satisfactorily resolved, will result in a lawsuit

against the entity, then the entity has 20 days to inform the claimant of the deficiencies in the

presented claim, or else the entity will waive the defenses of § 910.8 to the insufficiency of the

claim.  See City of Stockton, 42 Cal.4th at 744-45 & n.11; Phillips, 49 Cal.3d at 707, 709; Cal.

Gov. Code §§ 910.8, 911.

   A submitted "claim need not contain the detail and specificity required of a pleading, but

need only fairly describe what the entity is alleged to have done."  Stockett, 34 Cal.4th at 446.  If

a plaintiff "relies on more than one theory of recovery against the [public entity], each cause of

action must have been reflected in a timely claim.  In addition, the factual circumstances set forth

in the written claim must correspond with the facts alleged in the complaint."  Dixon v. City of

Livermore, 127 Cal.App.4th 32, 40 (2005); see Stockett, 34 Cal.4th at 447; Nelson v. State of

California, 139 Cal.App.3d 72, 79 (1982).  "[A] complaint is vulnerable to a demurrer if it alleges a factual basis for recovery which is not fairly reflected in the written claim."  Stockett, 34 Cal.4th at 447.  However, as the California Supreme court has recently explained:

> The claim, however, need not specify each particular act or omission later proven to have caused the injury.  A complaint's fuller exposition of the factual basis beyond that given in the claim is not fatal, so long as the complaint is not based on an "entirely different set of facts."  Only where there has been a "complete shift of allegations, usually involving an effort to premise civil liability on acts or omissions committed at different times or by different persons than those described in the claim" have courts generally found the complaint barred.  Where the complaint merely elaborates or adds further detail to a claim, but is predicated on the same fundamental actions or failures to act by the defendants, courts have generally found the claim fairly reflects the facts pled in the complaint.

Id.; see also Dixon, 127 Cal.App.4th at 40; White v. Superior Court, 225 Cal.App.3d 1505, 1510-11 (1990).  In other words, it is permissible to plead additional theories where the "additional theories [are] based on the same factual foundation as those in the claim, and the claim provide[s] sufficient information to allow the public agency to conduct an investigation into the merits of the claim."  Dixon, 127 Cal.App.4th at 42.

2.    Breach of Contract

To be entitled to damages for breach of contract, a plaintiff must plead and prove the following elements: (1) the existence of a contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant' s breach, and (4) resulting damage to the plaintiff.  Oasis West Realty, LLC v. Goldman, 51 Cal.4th 811, 821 (2011); Reichert v. General Ins. Co., 68 Cal.2d 822, 830 (1968).  A cause of action for breach of contract generally accrues at the time of the of breach.  See Romano v. Rockwell Int'l, Inc., 14 Cal.4th 479, 488 (1996); Reichert, 68 Cal.2d at 831; Cochran v. Cochran, 56 Cal.App.4th 1115, 1120 (1997).

3.    Breach of the Implied Covenant of Good Faith and Fair Dealing

"Breach of the covenant of good faith and fair dealing is nothing more than a cause of action for breach of contract."  Habitat Trust for Wildlife, Inc. v. City of Rancho Cucamonga, 175 Cal.App.4th 1306, 1344 (2009).  "There is an implied covenant of good faith and fair dealing in every contract that neither party will do anything which will injure the right of the other to receive the benefits of the agreement."  Kransco v. American Empire Surplus Lines Ins. Co., 23

Cal.4th 390, 400 (2000).  The implied covenant is "as much a part of the instrument as if [the covenant] were written out."  Comunale v. Traders & General Ins. Co., 50 Cal.2d 654, 662 (1950). "Because the covenant of good faith and fair dealing essentially is a contract term that aims to effectuate the contractual intentions of the parties, compensation for its breach has almost always been limited to contract rather than tort remedies."  Cates Construction, Inc. v. Talbot Partners, 21 Cal.4th 28, 43, 46 & n.9 (1999); see Kansco, 23 Cal.4th at 400; see also Jonathan Neil & Assoc., Inc. v. Jones, 33 Cal.4th 917, 923 (2004).  The California Supreme Court "recognizes only one exception to that general rule:  tort remedies are available for a breach of the covenant in cases involving insurance policies."  Spinks v. Equity Residential Briarwood Apartments, 171 Cal.App.4th 1004, 1054 (2009); see Cates Construction, 21 Cal.4th at 43-46 & n.9; see also Jonathan Neil, 33 Cal.4th at 923, 938.  Thus, "with the exception of bad faith insurance cases, a breach of the covenant of good faith and fair dealing permits a recovery solely in contract."  Spinks, 171 Cal.App.4th at 1054; Fairchild v. Park, 90 Cal.App.4th 919, 927 (2001); see also 20th Century Ins. Co. v. Superior Court, 90 Cal.App.4th 1247, 1266 (2001).  Accordingly, punitive damages are not recoverable for the breach of the implied covenant of good faith and fair dealing in cases that do not involve insurance policies.  See Cates Construction, 21 Cal.4th at 61.

> 4.   Conversion

"Stated generally, conversion is any act of dominion wrongfully exerted over another's personal property in denial of or inconsistent with his rights therein."  Zaslow v. Kroenert, 29 Cal.2d 541, 549 (1946); Collin v. American Empire Ins. Co., 21 Cal.App.4th 787, 812 (1994).  A plaintiff must show that the defendant had "an intention or purpose to convert the goods and to exercise ownership over them, or to prevent the owner from taking possession of his property."  Zaslow, 29 Cal.2d at 550; Spates v. Dameron Hospital Assn., 114 Cal.App.4th 208, 222 (2003).  A claim for conversion accrues from the date of the conversion, that is from the date that the a person wrongfully exerts dominion over property that is inconsistent with the rights of the owner in the property.  See Zaslow, 29 Cal.2d at 449-50; Bono v. Clark, 103 Cal.App.4th 1409, 1433-34 (2002); Naftzger v. American Numismatic Society, 42 Cal.App.4th 421, 429 (1996).

1    *Discussion*

2       1.      Breach of Contract

3       Breach of contract claims are subject to § 911.2's one year limitations period.  City of

4  Stockton, 42 Cal.4th at 746 n.13.  As explained above, GSS argues that its breach of contract

5  claim is timely under three theories.  The Court will address each theory separately.

6              a.      July 30, 2010  Accrual Date

7       GSS relies on *Romano* and Section IX of the Agreement.  In the context of a breach of

8  employment contract, *Romano* held that, "where there are ongoing contractual obligations the

9  plaintiff may elect to rely on the contract despite a breach, and the statute of limitations does not

10  begin to run until the plaintiff has elected to treat the breach as terminating the contract."

11  Romano, 14 Cal.4th at 489.  Section IX of the Agreement, which is entitled "Termination," reads

12  in pertinent part: "County shall make full payment to [GSS], in accordance with the following

13  Section X, at the appropriate price(s) applicable under the terms hereof, for the Equipment and

14  monitoring services provided to County by [GSS] pursuant hereto, and any such payment

15  obligation so incurred shall survive the termination or expiration of this Agreement."  Complaint

16  Ex. A.  Section X deals with compensation and establishes a 45 day invoice period.[5]  See Ex. A.

17  GSS contends that Section IX creates continuing or on-going obligations, and thus, pursuant to

18  *Romano*, GSS can choose when to stop relying on the contract, and that it stopped relying on the

19  contract once it received the County's July 30, 2010, letter.  The Court is not convinced by GSS's

20  argument.

21       Section IX indicates that, once the Agreement is terminated, the payment obligation

22  survives the termination of the Agreement, and the County is to make payment to GSS in

23  accordance with Section X.  In turn, Section X deals with compensation, and appears to give the

24  County 45 days to pay the invoice once the invoice is received.  Therefore, the obligation that

25  survives the termination of the agreement is the obligation to pay the final invoice within 45 days

26  of receipt.  The Court sees no other obligations following termination of the Agreement.  The

27

28       [5] Section VI of the Agreement deals with damage, theft, and tampering.  See Ex. A.  Relatedly, Section VI establishes an invoice systems for GSS to charge the County for repairs and replacements, and provides the County with 45 days in which to pay the invoice.  See id.; see also Opposition at 11:10-12.

1    Agreement does not provide for a renewal of the 45 day payment period, nor does the Agreement

2    provide for different payments or additional obligations by the County beyond the 45 day period.

3    Rather, what the Agreement appears to create is a final payment date once a party invokes its

4    right to terminate the Agreement.  The obligation is not continuing, it is finite and definite.  Once

5    the 45 day period has elapsed without payment, the Agreement is breached.  Further, the

6    language from *Romano* that GSS relies upon envisions a contract that has not been terminated: ".

7    . . the statute of limitations does not begin to run until the plaintiff has elected to treat the breach

8    *as terminating the contract.*" Romano, 14 Cal.4th at 489; Opposition at 10:4-7.  In this case,

9    there is no dispute that the Agreement terminated in October 2009.  Once termination occurred,

10   the only thing left for the County to do was to pay the invoice within 45 days of receipt.  Unlike

11   *Romano*, there are no other benefits under the Agreement that GSS could rely upon receiving

12   from the County, or any conduct to suggest that the Agreement had not actually terminated.  Cf.

13   Romano, 14 Cal.4th at 490 (while discussing anticipatory repudiation, noting that "Romano

14   continued to perform and accept compensation until the time of actual termination, reflecting an

15   election to treat the contract as still in effect.").  That is, the only thing that GSS could rely upon

16   following the County's decision to terminate the Agreement was that the County would pay the

17   invoice within 45 days.  Without more from GSS, the language of the Agreement shows that the

18   obligation that survived the termination was of a limited and finite nature, was not continuing

19   and on-going, and was simply to pay the final invoice within 45 days of receipt.

20          The County contends that the deadline for paying the final invoice was January 27, 2010,

21   and that, since no payment was made, the Agreement was breached on January 28, 2010.  This is

22   consistent with the January 29, 2010, letter sent by GSS to the County.  GSS's letter states that

23   payment is "past due," and that per the Agreement, "this invoice was due to be paid in 45 days or

24   by January 27, 2010."  Complaint Ex. C.  Accordingly, there appears to be no real dispute that

25   payment was due no later than January 27, 2010.  Since payment was not received on this date,

26   and the only obligation following termination that has been presented to the Court was for the

27   County to pay within 45 days, the breach of the Agreement occurred on January 28, 2010.  See

28   Complaint Ex. A at Sections IX, X; Complaint Ex. C.  Because the Agreement was breached on

13

1    January 28, 2010, and there is nothing to indicate that the discovery rule would have application

2    in this case (as evidenced by GSS's January 29, 2010 letter), GSS's breach of contract claim

3    accrued on January 28, 2010.  See Reichert, 68 Cal.2d at 831; Cochran, 56 Cal.App.4th at 1120;

4    Complaint Ex. C.  With an accrual date of January 28, 2010, the February 14, 2011, notice of

5    claim is not timely.  See  Cal. Gov. Code § 911.2(a).

6                                  b.        January 24, 2011  Letter

7             As discussed above, on January 24, 2011, GSS's counsel sent the County a letter ("the

8    Letter") via certified mail.  See Plaintiff's Ex. R.  See id.  The Letter advises the County that the

9    Vaughn Legal Group has been retained by GSS in order to enforce GSS's rights with respect to

10   the Agreement.  See id.  The Letter states that a final invoice was sent, but the County refused to

11   pay.  See id.  The Letter indicates that the County has not been dealing in good faith and

12   continues to be in breach of the Agreement.  See id.  The Letter then describes the final invoice,

13   various correspondences and the positions taken by the County, and the modifications made by

14   GSS to the final invoice amount.  See id.  The Letter states that the County is attempting to write

15   obligations into the Agreement that do not exist, and thus is acting in bad faith.  See id.  The

16   Letter then demands payment of $243,991.05, which is the sum of the invoice amount from April

17   28, 2010, plus interest.  See id.  The Letter concludes that GSS "demands payment in the amount

18   of $243,991.05 . . . within ten (10) days from receipt of this letter.  If such payment is not made,

19   GSS has authorized this office to exercise and [sic] all of its legal rights against the [County]."

20   Id.  The Letter was signed by GSS's attorney Barack Vaughn, and was sent on letterhead from

21   the Vaughn Legal Group.  See Opposition at 13:9-18.[6]

22            As described above, the contents of the Letter do not strictly comply with § 910.  The

23   name of the claimant (GSS) is identified, but GSS's post office address is not included.  See Cal.

24   Gov. Code § 910(a).  The County is informed that the Vaughn Legal Group has been retained to

25   represent GSS in the dispute, and the law firm's post office address is identified on the

26   letterhead.  By informing the County that a law firm has been hired, it should be reasonably

27

28        [6]Exhibit R appears to be a computer generated copy since there is no signature and there is no letterhead.
     However, the County did not dispute GSS's representation of the January 24 letter either in its reply or at oral
     argument.  Accordingly, the Court will credit the representations about the January 24 letter made in the opposition.

1   understood that further correspondences/notices are to go through the law firm.  Thus, the

2   address to send future notices is sufficiently identified.[7]  See Cal. Gov. Code § 910(b).  The

3   Letter also indicates that a final invoice was sent on December 10, 2009, identifies the method of

4   calculating the amount of the December 2009 invoice, indicates that the Agreement provided the

5   County with 45 days to pay the invoice, and then describes the sequences of additional

6   correspondences and adjustments to the invoice.  Thus, the date and circumstances surrounding

7   the occurrence, as well as a general description of the County's obligation under the contract, are

8   identified.  See Cal. Gov. Code §§ 910(c), (d).  No particular employee caused GSS injury, rather

9   it is the County that allegedly breached the agreement.  Thus there is no need to identify the name

10  of a particular employee.  See Cal. Gov. Code § 910(e).  The amount claimed is listed as

11  $243,991.05.  Identifying this amount is technically improper.  The Government Code requires

12  that an amount of damages be identified if the amount is less than $10,000.00.  See Cal. Gov.

13  Code § 910(f).  If the amount claimed exceeds $10,000, then "no dollar amount shall be included

14  in the claim . . . [but the claim] shall indicate whether the claim would be a limited civil case."

15  Id.  Finally, the Letter required the County to reply within 10 days of receipt.  Section 910 does

16  not contain any time limits for an entity to respond to a notice of claim, but a separate provision

17  gives a public entity 45 days in which to act upon a claim.  See Cal. Gov. Code §§ 910, 912.4.

18        Despite the technical non-compliance with § 910, the failure to give GSS's address, as

19  well as the identification of a specific amount over $10,000 would not have prevented the County

20  from making an investigation of the merits of GSS's claim and possibly settle it without the

21  expense of litigation.  See Connelly, 146 Cal.App.4th at 38.  It has been held that identifying the

22  claimant and providing the address of the claimant's attorney substantially complies with §

23  910(a).  See Gay-Straight Alliance Network v. Visalia Unified Sch. Dist., 262 F.Supp.2d 1088,

24  1107 (E.D. Cal. 2001); Cameron v. City of Gilroy, 104 Cal.App.2d 76, 80 (1951).  Also,

25  providing the dollar amount would give the County a starting point for assessing potential

26  liability, as well as a settlement strategy, and also informs the County that the case is an

27

28        [7]Further, the County's February 1, 2011, response to the Letter was mailed to GSS's counsel.  See
    Complaint Ex. P.

unlimited civil case.  Cf. Cal. Gov. Code § 910(f).  Inclusion of the dollar amount appears to be

harmless.  Finally, including the 10 day time period in which to respond was not appropriate in

terms of claims presentation.  However, the "substantial compliance" doctrine relative to this

case deals with the adequacy of the Letter compared with the provisions of § 910 and § 910.2,[8]

which establish the required content for a notice of claim.  Neither of those sections deal with

deadlines for a public entity to respond to a demand.  As long as the Letter substantially includes

the information required by § 910, inclusion of the 10 day response time is harmless surplusage.

Therefore, the Letter substantially complied with § 910.  See Ardon, 52 Cal.4th at 247-48;

Connelly, 146 Cal.App.4th at 38.

The County raises several arguments against the Letter.  Relying primarily on *Phillips v.*

*Desert Hosp. Dist.*, 49 Cal.3d 699 (1989) and *Schaefer Dixon Associates v. Santa Ana Watershed*

*Project Auth.*, 48 Cal.App.4th 524 (1996), the County contends that the Letter did not convey to

the Probation Department that a claim was being presented because the letter: (1) does not

indicate that a lawsuit was imminent; (2) included only a 10 day period to respond with payment;

(3) was one of several letters that were exchanged; and (4) was not treated by GSS as a "claim"

because GSS later filed a formal claim on February 14.  The Court is not convinced by these

arguments.

It is true that the Letter was one of several letters that were exchanged between the

parties.  However, the Letter is different.  The tone of the Letter is more forceful, it lays out the

history of the dispute, it demands payment, it states that all legal rights against the County will be

pursued, it gives the County a deadline, and it is written by an attorney who was hired to deal

with this dispute.  None of the of other correspondences came from attorneys who threatened to

pursue "all legal rights" if payment was not received by a certain time.  It is reasonable to read

this letter as threatening imminent litigation.  Cf. Alliance Fin. v. City and County of San

Francisco, 64 Cal.App.4th 635, 647-50 (1998); Foster v. McFadden, 30 Cal.App.3d 943, 945 n.2

(1973); cf. also Green v. State Center Comm. College Dist., 34 Cal.App.4th 1348, 1358 (1995)

---

[8]There is not dispute that the January 24, 2011, letter also complies with § 910.2 since it is signed by
Barack Vaughn.

1  (holding that to be a "claim as presented," a letter must "make it readily discernable . . . that the

2  intended purpose thereof is to convey the assertion of a compensable claim against the entity

3  which, if not otherwise satisfied, will result in litigation.").  In fact, Reinke, who corresponded

4  with GSS from the beginning of the dispute in January 2010, and was thus familiar with the prior

5  correspondences, see Complaint at Exhibits B through P, replied to the Letter on February 1,

6  2011, by informing GSS that the Government Claims Act required presentation of a claim to the

7  County Board of Supervisors and included a copy of the appropriate form.  See id. at Ex. P.  As

8  part of Reinke's response, he wrote: "Because you are an attorney, I understand that [GSS] is

9  now threatening to file a lawsuit against the [County] if I do not agree to your demand."  Id.

10 Thus, the Letter was interpreted as a threat of imminent litigation, and something that was

11 different from prior correspondences.  Cf. Alliance, 64 Cal.App.4th at 647-50.

12         That GSS filed a "formal claim" using the County provided form on February 14, 2011,

13 does not mean that the Letter was insufficient.  The indication is that GSS filed the February 14,

14 2011, claim in response to the February 1 letter from Reinke/the Probation Department.

15 Reinke/the Probation Department informed GSS that Reinke was not authorized to respond "to

16 litigation matters," stated that a notice of claim needed to be sent to the Board of Supervisors,

17 and provided the form to do so.  See Complaint Ex. P.  When GSS filed its February 14 claim, it

18 stated in part, "Enclosed, please find (1) a 'Claim For Damages' from for the County of Fresno

19 and Attachment 'A' thereto, and (2) a copy of the correspondence dated February 1, 2011 from

20 Linda Penner Chief Probation Officer for the County of Fresno, *instructing this office to submit*

21 *the attached Claim for Damages.*"  Complaint Ex. P.  The Court is not aware of a requirement

22 that, instead of following the instructions of Reinke's letter, GSS was required to insist that the

23 Letter was a sufficient claim or else waive the ability to rely on the Letter.  Given the February 1

24 letter, as well as GSS's interpretation of that correspondence, the Letter may reasonably be

25 interpreted as an attempt to file a valid claim.  Further, even if the Letter was not meant to be an

26 attempt to file a claim, the subjective intent of GSS's counsel is not controlling.  See Gay-

27 Straight Alliance, 262 F.Supp.2d at 1108.  Whether a document constitutes a "claim" is

28 determined by the information contained therein, and "it is not essential that it be given with the

intention of complying with the claims statute." Id. at 1109; Wheeler v. County of San

Bernardino, 76 Cal.App.3d 841, 847 (1978); Myers v. County of Orange, 6 Cal.App.3d 626, 637

(1970); see also Phillips, 49 Cal.3d at 707, 709-10; Alliance, 64 Cal.App.4th at 650.  When a

public entity receives a document which contains the information required by § 910 and is signed

by the claimant or her agent as required by § 910.2, the public entity has been presented with a

'claim' . . . ."  Phillips, 49 Cal.3d at 707.

The County also points out that the January 24 letter was not sent to a person authorized

by § 915 to receive notice of government claims.  The County is correct.  However, the

Agreement included Section XVIII, which is entitled "Notification."  That section reads in

pertinent part:

> The persons and their addresses having authority to give and receive notices under
> this Agreement include the following:
>
> County:        Fresno County Probation Department
>                1100 Van Ness Ave.
>                . . . .
>                Fresno, CA
>
> . . . .
>
> Any and all notices between the County and [GSS] provided for or permitted
> under this Agreement or by law shall be in writing and shall be deemed duly
> served when personally delivered to one of the parties, or in lieu of such personal
> services, when deposited in the United States Mail, postage prepaid, addressed to
> such party.

Complaint Ex. A at Section 18.  The County argues that this section "merely references 'notices

under this Agreement.'"  The County appears to focus on the first paragraph, which indeed refers

to persons having authority to give and receive notices "under this Agreement."  However, as

quoted above, the second paragraph of Section XVIII references "notices provided . . . under this

Agreement *or by law*."  By including the phrase "or by law," Section XVIII extends to notices

beyond those that are provided for, or required by, the Agreement itself.  Sending a claim or

notice of a claim to a government entity would seem to be a notice provided "by law,"

specifically Government Code § 915 and § 945.4.  Further, the Government Code "permits the

parties to an agreement to alter the claims presentation requirements otherwise imposed by the

act."  Alliance, 64 Cal.App.4th at 644; see Cal. Gov. Code § 930.2.  One reading of Section

XVIII suggests that such an alteration occurred in this case.  Section XVIII as a whole may be

18

read as permitting a notice of claim required by the Government Claims Act to be sent to the Probation Department, since such a notice is a notice provided "by law" and it appears that the Probation Department may give and receive notices.  Under this reading, sending the Letter to the Probation Department would not have complied with § 915, but would have complied with § 930.2 and Section XVIII.  That is, sending the Letter to the Probation Department was appropriate.

The County contends that Section XVIII does not expressly state that it alters any requirement of the Government Claims Act.  The County also relies on Section XXIII of the Agreement, which reads: "The rights and obligations of the parties and all interpretation and performance of this Agreement shall be governed in all respects by the laws of the State of California."  However, the Court is unaware of any requirement that a contract must use particular language or expressly state that it changes specific requirements of the Government Claims Act.  Cf. Cal. Gov. Code § 930.2.  Further, Section XXIII appears to be nothing more than a choice of law provision that designates California law as controlling.  As already cited, California law allows a public entity to alter the requirements of the Government Claims Act.  See id.; Alliance, 64 Cal.App.4th at 644.

In sum, the Letter addresses all of the required contents of § 910, but does have technical deficiencies.  However, those deficiencies are not material and the letter is in substantial compliance with § 910.  Further, although the letter was sent to the Probation Department, one reading of Section XVIII is that the Agreement permits notices that are provided "by law" to be sent to the Probation Department.[9]  At this point, the Complaint (including the attached exhibits and the Letter which is incorporated by reference) adequately indicates compliance with the Government Code's claim presentation requirements.  Dismissal of the breach of contract claim is not appropriate at this time.  See Gay-Straight Alliance, 262 F.Supp.2d at 1107-10.

---

[9]Other interpretations of Section XVIII are possible.  However, under the Rule 12(b)(6) framework, allegations are taken as true and construed in the light most favorable to the non-moving party.  Marceau, 540 F.3d at 919.  At this stage, the Court need not definitively interpret Section XVIII.  For purposes of this motion, it is enough that the Letter and Section XVIII appear to satisfy the Government Claims Act.  If it so chooses, the County may raise the issue of Section XVIII's interpretation at a later time.

1    c.    Equitable Tolling[10]

2    Equitable tolling is a judicially created doctrine that suspends or extends a statute of

3    limitations as necessary to ensure that fundamental practicality and fairness occurs. Lantzy v.

4    Centex Homes, 31 Cal.4th 363, 370 (2003). When applicable, "the effect of equitable tolling is

5    that the limitations period stops running during the tolling event, and begins to run again only

6    when the tolling event has concluded." Id. "Broadly speaking, [equitable tolling] applies when

7    an injured person has several legal remedies and, reasonably and in good faith, pursues one."

8    McDondald v. Antelope Valley Comm. Col. Dist., 45 Cal.4th 88, 100 (2008). Equitable tolling

9    may apply "where one action stands to lessen the harm that is the subject of a potential second

10   action; where the administrative remedies must be exhausted before a second action can proceed;

11   or where a first action, embarked upon in good faith, is found to be defective for some reason."

12   Id.; see also California Restaurant Mgmt. Sys. v. City of San Diego, 195 Cal.App.4th 1581, 1593

13   (2011). Equitable tolling requires a plaintiff to show: (1) timely notice, (2) lack of prejudice to

14   the defendant, and (3) reasonable and good faith conduct by plaintiff. McDonald, 45 Cal.4th at

15   102. "The timely notice requirement essentially means that the first claim must have been filed

16   within the statutory period . . . [and] the filing of the first claim must alert the defendant in the

17   second claim of the need to begin investigating the facts which form the basis for the second

18   claim." Id. at n.2 (quoting Collier v. City of Passedena, 142 Cal.App.3d 917, 924 (1983)).

19   Here, GSS relies on the Letter from its counsel to equitably toll the limitations period.

20   See Opposition at 18:8-20. However, there has been an insufficient showing that equitable

21   tolling makes the breach of contract cause of action timely.

22   Assuming that equitable tolling applies and that the Letter from GSS's meets the "timely

23   notice" element, the Letter was sent on January 24, 2011, which is four days before the

---

[10] Given the Court's conclusion that the Letter constitutes a notice of claim for purposes of the Government Claims Act, resolution of GSS's third theory for a timely claim, i.e. equitable tolling, is technically unnecessary. However, in the above analysis regarding the Letter, the Court noted that other interpretations of Section XVIII are possible and permitted the County to raise the issue of Section XVIII's interpretation at a later time. If the County does raise Section XVIII's interpretation at a later time, and the additional evidence results in a conclusion that is contrary to GSS, then the equitable tolling theory again becomes relevant. Since equitable tolling has been raised and briefed, and since that theory still has theoretical application despite the Court's above analysis of the Letter, the Court will exercise its discretion and conduct an analysis regarding GSS's equitable tolling theory.

limitations period ended.  In a February 1, 2011, responding letter, the County (through Reinke) informed GSS that a formal notice of claim was required to be submitted.  See Complaint's Ex. P.  That is, the County resolved the January 24 letter, i.e. "the first claim," on February 1, 2011. Since tolling merely suspends the limitations period and lasts for only the duration of time that the event causing the tolling lasts, see Lantzy, 31 Cal.4th at 370, the remaining period of the one year limitations period began to run on February 1, 2011.  Because four days were left on the limitations period as of January 24, GSS would have had until February 5, 2011, to submit a formal Government Claims Act claim.  However, GSS's notice of claim was not deposited in the post office until February 14, 2011, and was therefore untimely.[11]  Assuming that the Letter equitably tolled the limitations period, the February 14, 2011, notice of claim was still filed after the limitations period had run.

### 2.   Conversion

There are problems with GSS's conversion claim.

Conversion deals with loss, or interference with ,or damage to personal property.  See Jamgotchian v. Slender, 170 Cal.App.4th 1384, 1400-01 (2009); Collin v. American Empire Ins. Co., 21 Cal.App.4th 787, 812 (1994); Judicial Council of California Civil Jury Instructions (2011 Ed.) – § 2100 ("CACI").  Conversion therefore constitutes an injury to personal property for purposes of § 911.2.  Cf. Cal. Gov't Code § 810.8; Holt, 20 Cal.3d at 654 n.4; Jamgotchian, 170 Cal.App.4th at 1400-01; Collin, 21 Cal.App.4th at 812.  As such, the conversion claim is subject to § 911.2's six month limitations period.  However, the Complaint alleges that the County converted the monitoring devices on March 26, 2010.  See Complaint at ¶ 39.  Six months from March 26, 2010, is September 26, 2010.  Since the Letter and the February 14, 2011 claim are well beyond September 26, 2010, GSS did not file a timely claim, which would make dismissal

---

[11]Exhibits to the complaint indicate that it took two days for correspondences to be delivered between the County and GSS's attorney, who is located in Calabasas, California.  See Complaint's Ex. P (Reinke indicated that the Letter was received on January 26, and the County indicated that the February 14 notice of claim was received on February 16).  Even if the Court were to give GSS two more days, i.e. the date of receipt of the County's February 1 letter, and restart the limitations period on February 3, 2011, GSS would have had until February 7, 2011, to submit a formal Government Claims Act claim.  The February 14 notice would still be untimely under this scenario.

21

appropriate.  See City of Stockton, 42 Cal.4th at 738; Shirk, 42 Cal.4th at 209; Bodde, 32 Cal.4th at 1239-40; Sparks, 173 Cal.App.4th at 738; Baillargeon v. Department of Water and Power, 69 Cal.App.3d 670, 687 (1977).

At oral argument, GSS stated that the March 26 allegation is erroneous and that the date of conversion should have been July 30, 2010.  GSS did not explain what the County did on July 30, 2010, that would constitute a conversion.  The Exhibits attached to the Complaint do not clarify what the County did to convert property on July 30, 2010.  As discussed above, the County sent a responding correspondence on July 30, 2010, that again questioned the invoice and performed a calculation indicating that the County owed GSS approximately $3,000.00.  See Complaint's Ex. M.  Nothing about that the County's July 30, 2010, correspondence indicates that a conversion occurred.  The basis for arguing that a conversion occurred on July 30, 2010, is far from clear.  Nevertheless, assuming that GSS intended to allege that the conversion occurred on July 30, 2010, GSS would have had six months, that is until January 30, 2011, to submit a claim to the County for conversion.  See Cal. Gov. Code § 911.2.  While the February 14 claim would be untimely, the Letter was presented to the County prior to January 30, 2011.[12]

Each cause of action must be fairly reflected in a timely notice of claim.  See Stockett, 34 Cal.4th at 447.  A cause of action in a complaint is subject to dismissal if the complaint "alleges a factual basis for recovery which is not fairly reflected in the written claim."  Id.  Under the conversion cause of action, the Complaint alleges in pertinent part that the County refused, and continues to refuse, to return property or to "pay in return" for the property despite many demands by GSS to do so.  See Complaint at ¶ 40.

A review of the Letter shows that the breach of contract claim is clearly reflected.  The Letter quotes several sections of the Agreement, states that the County is in "breach," accuses the County of attempting to rewrite the Agreement, and demands payment based on the last invoice submitted plus interest.  See Plaintiff's Ex. R.  The Letter also states that GSS "finalized all of their Electronic Monitoring Equipment and included a final invoice for their services based on

---

[12] Indeed, GSS's opposition relies on the Letter, and not the February 14 claim, to argue that the conversion cause of action is proper.  See Opposition at 19:8-20:8.

[the Agreement]." Id.

What is not apparent in the Letter is conduct that would constitute conversion. There is no mention in the Letter that GSS demanded the return of equipment or that the County refused to return equipment despite demands by GSS. Nor does the letter contend that the County wrongfully took possession of the equipment, or that the County prevented GSS from having access to the equipment, or that the County destroyed the equipment. See CACI § 2100. The Letter does mention that GSS took into account credits for returned equipment and then parenthetically notes that the equipment was not returned. See Plaintiff's Ex. R. However, GSS did not demand the return of that equipment (or any equipment) or make further mention of that equipment. In fact, the amount demanded in the Letter is based on the credits for this very equipment that apparently was not returned. See id. Giving the County credit on the invoice for this equipment is inconsistent with a demand for the equipment's return. Relatedly, the Letter's recitation of the formula for determining the amount of the invoice does not fairly reflect a cause of action for conversion. The damage for conversion is the full value of the chattel. See Jamgotchian, 170 Cal.App.4th at 1400. The amount demanded by GSS is based entirely on the Agreement's formula (and credits pursuant to the Agreement), which yields a sum that is less than the full value of GSS's property. Cf. Plaintiff' s Ex. R (seeking approximately $244,000) with Complaint ¶ 38 (value of the property that County allegedly converted is $727,275).

What is absent from the Letter are any facts or contentions that reflect an act of conversion by the County. See Zaslow, 29 Cal.2d at 549 ("[C]onversion is any act of dominion wrongfully exerted over another's personal property in denial of or inconsistent with his rights therein."). The focus of the Letter is based entirely on the failure to pay the invoice as required by the Agreement. A demand for the return of the equipment, or a refusal to return property after a demand for its return was made, are not a part of the Letter. The conversion claim rests on a factual foundation separate from that reflected in the Letter, and thus the conversion claim is not fairly reflected in the Letter. Dismissal of the conversion cause of action is appropriate.

1    3.    Breach of the Implied Covenant of Good Faith and Fair Dealing

2    At oral argument, GSS's counsel confirmed that it is seeking tort remedies, including

3    punitive damages, pursuant to this cause of action.  See also Complaint at ¶ 35.  However, as

4    noted above, the remedies available for the breach of the implied covenant of good faith and fair

5    dealing are contract remedies.  See Kansco, 23 Cal.4th at 400; Cates Construction, 21 Cal.4th at

6    43, 46 & n.9.  While tort remedies are available for cases involving insurance policies, see

7    Spinks, 171 Cal.App.4th at 1054, this case does not involve an insurance policy.  This case

8    simply involves an arms length contractual relationship whereby GSS provided equipment and

9    monitoring services, and the County paid for the service.  See Complaint Ex. A.  The case does

10    not involve the type of special relationship found in the insurance context.  GSS may not recover

11    tort remedies under this cause of action.  See Kansco, 23 Cal.4th at 400; Cates Construction, 21

12    Cal.4th at 43, 46 & n.9; Spinks, 171 Cal.App.4th at 1054; Fairchild, 90 Cal.App.4th at 927; 20th

13    Century Ins., 90 Cal.App.4th at 1266.  All tort remedies claimed under this cause of action will

14    be dismissed.

15    With respect to the timeliness of the claim, at oral argument, the County's counsel stated

16    that a claim for the breach of the implied covenant of good faith and fair dealing accrues at the

17    same time as a breach of contract claim.  This is consistent with case law, as well as the nature of

18    the implied covenant.  See Sherman v. Wells Fargo Bank, N.A., 2011 U.S. Dist. LEXIS 51641,

19    *12 (E.D. Cal. May 12, 2011); Comunale, 50 Cal.2d at 662.  Since the Court has found that the

20    evidence indicates a timely claim presentation with respect to the breach of contract claim, the

21    claim for breach of the implied covenant of good faith and fair dealing is also timely.  There is no

22    argument that this cause of action is not fairly reflected in the Letter.[13]  Because the cause of

23    action is timely, the Court does not see a reason why it may not be pursued in this case.  The

24    limitation will be that GSS may only seek contract remedies.  See Spinks, 171 Cal.App.4th at

25    1054.

26

27    _____

28    [13]The Court does not understand the County to argue that a cause of action for breach of the implied
covenant of good faith and fair dealing was not reflected in the Letter.  The Letter expressly alleges: "Such conduct
indicates 'bad faith' on behalf of the County."  Plaintiff's Ex. R.  Rather, the Court understands the County to argue
that an election to seek tort remedies was not fairly reflected.

The Court will dismiss GSS's claims for tort damages, but will not dismiss the cause of action as a whole.  The second cause of action will be read as seeking only contract damages.

## CONCLUSION

The County moves to dismiss each of the three claims alleged in the Complaint for failure to comply with the requirements of the Government Claims Act.

With respect to the breach of contract cause of action, the submissions indicate that the breach of contract cause of action accrued on January 28, 2010.  GSS's January 24, 2011, letter was submitted prior to the running of the one year limitations period.  This letter constitutes a claim and substantially complies with the requirements of Government Code § 910 and § 910.2.  Further, based on Section XVIII, it appears that sending the Letter/claim to the Probation Department was permissible.  Because a claim was timely presented, dismissal is inappropriate.

With respect to the breach of the implied covenant of good faith and fair dealing, GSS seeks tort remedies.  Because this case does not involve an insurance policy, but is instead a simple arms length business relationship, tort remedies for this cause of action are unavailable.  However, this cause of action accrued at the same time as the breach of contract cause of action.  There does no appear to be a dispute whether this cause of action "in general" is fairly reflected in the Letter.  As such, there is no apparent reason why GSS should be prohibited from seeking contract remedies under this cause of action.  The Court will dismiss with prejudice the tort remedies, but will otherwise allow pursuit of contract remedies.

Finally, with respect to the conversion claim, dismissal is appropriate for several reasons.  First, the conversion is alleged to have occurred on March 26, 2010.  With this accrual date, no claim was timely presented to the County.  Second, assuming that conversion occurred on July 30, 2010, the conversion claim is not fairly reflected in the January 24, 2011, letter.  Breach of the Agreement is the entire focus of the letter.  No acts are included that would constitute conversion.  Specifically, there are no references or indications that GSS demanded the return of equipment or that the County refused to return equipment.  The Court does not see how amendment could cure this defect.  Dismissal of the conversion claim will be with prejudice.

Accordingly, IT IS HEREBY ORDERED that:

1.      Defendant's motion to dismiss the first cause of action is DENIED;

2.      Defendant's motion to dismiss the third cause of action is GRANTED and the third cause of action is DISMISSED with prejudice;

3.      Defendant's motion to dismiss the second cause of action is GRANTED in part in that the tort remedies claimed under this cause of action are DISMISSED with prejudice; and

4.      Defendant may file an answer within fourteen (14) days of service of this order.

IT IS SO ORDERED.

Dated:    September 1, 2011

_____
CHIEF UNITED STATES DISTRICT JUDGE